SCHNADER HARRISON SEGAL & LEWIS LLP
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: (856) 482-5222
Fax: (856) 482-6980
ljrodriguez@schnader.com

*Liaison Counsel for Plaintiff*

GLANCY PRONGAY & MURRAY LLP
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
(212) 935-7400
bsachsmichaels@glancylaw.com

*Counsel for Plaintiff Melvin Emberland*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELVIN EMBERLAND, Derivatively on Behalf of Nominal Defendant RENOVACARE, INC., <br><br> Plaintiff, <br> v. <br><br> HARMEL S. RAYAT, and THOMAS BOLD, <br><br> Defendants, <br> and <br><br> RENOVACARE, INC., <br><br> Nominal Defendant. | Case No. <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Melvin Emberland ("Plaintiff") brings this derivative complaint for the benefit of nominal defendant, RenovaCare, Inc. ("RenovaCare" or the "Company"), against certain members of its Board of Directors (the "Board") and certain of its executive officers (collectively the "Defendants") seeking to remedy certain Defendants' breaches of fiduciary duties and contribution for violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, filings by RenovaCare with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.    NATURE OF THIS ACTION

1.    RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products. Its activities primarily consist of research and development, business development, and capital raises. It owns the CellMist System, which consists of a treatment method for cell isolation for the regeneration of human skin cells and other tissues (the CellMist Solution) and a solution sprayer device to deliver cells to the treatment area (the SkinGun).

PHDATA 8003146_1

2.      On May 28, 2021, the SEC issued a litigation release stating that RenovaCare was being charged with securities fraud. According to the SEC's complaint, between July 2017 and January 2018, the Company's controlling shareholder and Chairman, Harmel Rayat ("Rayat"), "arranged, and caused RenovaCare to pay for, a promotional campaign designed to increase the company's stock price." Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials, and arranged to funnel payments to the publisher through consultants to conceal RenovaCare's involvement in the campaign." When OTC Markets Group, Inc. requested RenovaCare to explain its relationship to the promotion, the complaint alleges that "Rayat and RenovaCare then drafted and issued a press release and a Form 8-K that contained material misrepresentations and omissions denying Rayat's and the company's involvement in the promotion."

3.      On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

4.      These revelations precipitated the filing of a securities class action in this District against RenovaCare and certain of Defendants, *In re RenovaCare, Inc. Securities Litigation*, Case No. 2:21-cv-13766-BRM-ESK (the "Securities Class Action").

5.      At least half of RenovaCare's current Board is not disinterested and independent and/or faces a substantial likelihood of liability in connection with the

wrongdoing detailed herein. The Board is currently composed of two members. One of the directors, Rayat, is named and directly implicated in the SEC Action for his direction and control over the pump-and-dump scheme, thus he faces a substantial likelihood of liability for breach of fiduciary duty. Rayat is a controlling stockholder who wields significant influence over the management of the Company, so the other director, who is also CEO of RenovaCare, is not disinterested. Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.   JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 10(b) of the Securities Exchange Act of 1934. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Individual Defendants have received substantial

compensation in this district by engaging in numerous activities that had an effect in this District.

## III.  PARTIES

**Plaintiff**

8.  Plaintiff Melvin Emberland purchased 1,000 shares of RenovaCare on May 23, 2013 and has continuously owned RenovaCare stock since that date. He is a citizen of Oregon.

**Nominal Defendant**

9.  Nominal Defendant RenovaCare is a Nevada corporation with its principal executive offices located at 9375 E. Shea Blvd., Suite 107-A, Scottsdale, Arizona 85260.  From 2020 to approximately July 2021, its principal executive offices were located at 4 Becker Farm Road, Suite 105, Roseland, New Jersey, 07068. Prior to that, including during the time period at issue, its principal executive offices were located at 430 Park Avenue, New York, New York. RenovaCare's common stock trades on over-the-counter under the symbol "RCAR."

**Defendants**

10.  Defendant Harmel S. Rayat ("Rayat") served as Chairman of the Board of RenovaCare from March 2018 to October 2020 and was reappointed to the position in March 2021. He served as Chief Executive Officer ("CEO") of the Company from June 2018 to November 2019. He is named as a defendant in the Securities Class Action and in the SEC Action. He is a citizen of Florida.

4

11.     Defendant Thomas Bold ("Bold") served as CEO of the Company from December 2013 to June 2018.  He is named as a defendant in the Securities Class Action. He is a citizen of Pennsylvania.

12.     Defendants Rayat and Bold are collectively referred to as the "Individual Defendants."

**Relevant Non-Party**

13.     Kaiyo Nedd has been the CEO and a director of the Company since March 2021.

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

14.     By reason of their positions as officers, directors, and/or fiduciaries of RenovaCare and because of their ability to control the business and corporate affairs of RenovaCare, at all relevant times, the Individual Defendants owed RenovaCare and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage RenovaCare in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of RenovaCare and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to RenovaCare and its shareholders a fiduciary duty to exercise good faith and diligence in the

administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

15.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of RenovaCare, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with RenovaCare, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

16.     To discharge their duties, the officers and directors of RenovaCare were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of RenovaCare were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of the business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking

appropriate action to correct the misconduct and prevent its recurrence.

## V.   SUBSTANTIVE ALLEGATIONS

### A.   Background

17.     RenovaCare is a development stage company that has not generated any revenue since its inception and has no commercialized products. Its activities primarily consist of research and development, business development, and capital raises. It owns the CellMist System, which consists of a treatment method for cell isolation for the regeneration of human skin cells and other tissues (the CellMist Solution) and a solution sprayer device to deliver cells to the treatment area (the SkinGun).

18.     In May 2021, the SEC charged RenovaCare and Rayat for violations of the federal securities laws for engaging in a pump-and-dump scheme. *See Sec. & Exch. Comm'n v. Rayat, et al.*, Case No. 21-cv-4777 (S.D.N.Y.) (the "SEC Action"). According to the SEC, defendant Rayat solicited StreetAuthority to publish information, including falsely representing the efficacy of the SkinGun and caused RenovaCare to pay StreetAuthority $50,000 per month, routed through third parties to conceal his involvement. Among other things, defendant Rayat caused StreetAuthority to publish materials from October 2017 through at least January 2018, claiming that a patient with severe burns purportedly healed in three days

using the Skin Gun; in reality, the "before" and "after" pictures had been taken five years apart.

19.     Defendant Rayat also caused StreetAuthority to claim that the SkinGun could soon be approved by the U.S. Food and Drug Administration ("FDA") because it had submitted a 510(k) application. However, RenovaCare had not submitted such an application; though it had sought approval for use in clinical studies, that application had been withdrawn more than a year prior to StreetAuthority's statements.

20.     Moreover, when the OTC Markets sent a letter in January 2018 requiring RenovaCare to make public disclosures regarding StreetAuthority's promotional campaign, defendant Rayat caused the Company to issue a misleading response. Specifically, on January 8, 2018, defendant Rayat caused RenovaCare to issue a press release explicitly stating that the Company, its officers, and directors were ***not*** involved in the creation of the StreetAuthority materials, and was not affiliated with the authors of the reports. It also claimed that RenovaCare "had no editorial control over the content," despite defendant Rayat's intimate involvement in the creation of the promotional material.

21.     Defendant Rayat profited from the improper scheme. Before the promotional materials were issued, defendant Rayat acquired 524,000 shares of RenovaCare stock at below-market prices by exercising warrants and through a

private placement. The promotional scheme caused the price of RenovaCare stock to rise from $3.10 per share in October 2017 to $4.91 per share by January 5, 2018. While the Company's stock was inflated by the misleading information, defendant Rayat attempted to sell 500,000 shares through at least two brokerages and 2.42 million shares through a secondary offering.

**B.    The Individual Defendants Caused RenovaCare To Make Misleading Statements**

22.    On August 14, 2017, the Individual Defendants caused RenovaCare to file its quarterly report on Form 10-Q with the period ended June 30, 2017. It stated, in relevant part:

> Based on that evaluation the CEO has concluded that as of the end of the period covered by this report, our disclosure controls and procedures are effective in ensuring that: (i) information required to be disclosed by us in reports that we file or submit to the SEC under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in applicable rules and forms and (ii) material information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to our management, including our CEO, as appropriate, to allow for accurate and timely decisions regarding required disclosure.

23.    On November 14, 2017, the Individual Defendants caused RenovaCare to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2017. It stated, in relevant part:

> Based on that evaluation the CEO has concluded that as of the end of the period covered by this report, our disclosure controls and procedures are effective in ensuring that: (i) information required to be disclosed by us in reports that we file or submit to the SEC under the

PHDATA 8003146_1

Exchange Act is recorded, processed, summarized and reported within the time periods specified in applicable rules and forms and (ii) material information required to be disclosed in our reports filed under the Exchange Act is accumulated and communicated to our management, including our CEO, as appropriate, to allow for accurate and timely decisions regarding required disclosure.

24.     On January 8, 2018, the Individual Defendants caused RenovaCare to issue a statement "comment[ing] on recent market activity." Specifically, the Company issued a press release stating:

> [O]n January 3rd, 2018, OTC Markets Group Inc. ("OTC Markets") informed the Company that OTC Markets had become aware of promotional activities concerning the Company.
>
> OTC Markets provided an example, dated January 2nd, 2018, of the promotional material for reference. It is the Company's understanding that the material provided was part of an annual predictions report used in part to generate new subscribers for various newsletters owned by StreetAuthority LLC, an independent publisher founded in 2001. ***The Company had no editorial control over the content*** and was one of thirteen companies independently selected, researched and mentioned. The annual predictions report was disseminated during the last quarter of 2017. During this time, 2,190,000 shares traded, only 2% more than the average quarterly volume of 2,139,375 shares during all of 2017.
>
> Subsequently, later in the 4th quarter, a material announcement regarding a failed challenge to a RenovaCare patent was made public. On December 20th, 2017, a press release was issued by Avita Medical Limited disclosing that its petition for an Inter Partes Review with the Patent Trial and Appeal Board ("PTAB") to invalidate all claims in U.S. Patent No. 9,610,430 (owned by the Company) was denied. This press release was followed by an article in Stockhead on December 21st, 2017, which more fully reported on the PTAB denying Avita Medical Limited's petition, and, thereby, upholding the patentability of RenovaCare's technology.
>
> After the issuance of Avita Medical's press release and the follow-up article in Stockhead on December 21st, 2017, the trading volume of the

10

Company's common stock increased 84% to 62,829 shares per day between December 20th and December 29th, versus 32,720 per day previously between December 1st through December 19th, 2017.

***The Company is not affiliated in any way with the authors of the annual predictions report or its publisher.*** The Company issues press releases in the regular course of business and includes in its filings (the "SEC Filings") with the Securities and Exchange Commission (the "SEC") the material business activities of the Company, and investors are encouraged to rely on the information provided directly by the Company in such press releases and SEC Filings.

***In the report, the substance of the material statements pertaining to the Company's technology and products are not materially false or misleading***, even though the report has significantly simplified the descriptions of the clinical indications and outcomes related to the use of the Company's cell spray for the treatment of burns and wounds, and used promotional, advisory and superfluous language in describing the Company, its products and its stock. Moreover, the author comments on the Company's interaction with the U.S. Food and Drug Administration and the performance of RenovaCare's stock. The Company does not know the basis for such opinions or conclusions arrived-at by the author. Investors are reminded to rely upon the Company's own statements, press releases, and filings with the SEC for information related to these matters.

Following notification from OTCQB Markets, the Company immediately made inquiries of its executive officers, directors, controlling shareholders (i.e., shareholders owning 10% or more of the Company's securities) and third-party service providers regarding their involvement in the creation or distribution of promotional materials related to the Company and its securities.

***To the Company's knowledge, the Company, its executive officers, directors or, its controlling shareholder, or any third-party service providers have, directly or indirectly:***

- **not** been involved in any way (including payment of a third-party) with the creation or distribution of promotional materials, including the annual predictions report, related to the Company and its securities; and

11

- **not** sold or purchased (other than in than in private placements conducted by the Company as described below) any shares of common stock of the Company within the last 90 days. The Company's former service provider, Inspiren Media LLC, originally acquired 5,000 shares of the Company on July 25th, 2008 and sold on January 3rd, 2018, after termination of its agreement with the Company. All activity in the Company's common stock by the Company's executive officers, directors and controlling shareholders has been disclosed by such officer, director and shareholder in the Company's SEC Filings.

The Company was not involved in the creation, or directing the dissemination, of the report. Through its investor relations agencies, the Company paid $90,005.25 between October 24th, 2017 and January 2rd, 2018, as part of its contractual agreement to pay for out of pocket costs, including reimbursement of dissemination related costs, incurred by the investor relations agency.

(Emphases added.)

25.    On March 13, 2018, the Individual Defendants caused RenovaCare to file its annual report on Form 10-K for the period ended December 31, 2017. It stated, in relevant part:

Based on the evaluation, management, after evaluating the effectiveness of our "disclosure controls and procedures" (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)), have concluded that, as of December 31, 2017, our disclosure controls and procedures were effective in providing reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles.

26.    On April 12, 2019, the Individual Defendants caused RenovaCare to file its annual report on Form 10-K for the period ended December 31, 2018. It stated, in relevant part:

PHDATA 8003146_1

Based upon that evaluation, our Principal Executive Officer and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.

* * *

Management has identified the following material weaknesses in our internal control over financial reporting:

- Ineffective control environment due to an insufficient number of independent board members, insufficient oversight of work performed, and the lack of compensating controls over financial reporting due to limited personnel;

- Ineffective design, implementation, and documentation of internal controls impacting financial statement accounts and general controls over technology pertaining to user access and segregation of duties, banking and disbursements, and financial accounting system applications; and

- Ineffective monitoring controls related to the financial close and reporting process, including management's risk assessment process and its identification, evaluation, and timely remediation of control deficiencies

27. On May 14, 2020, the Individual Defendants caused RenovaCare to file its annual report on Form 10-K for the period ended December 31, 2019. It stated, in relevant part:

Based upon that evaluation, our Chief Executive Officer and Acting Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in

13

Management's Report on Internal Control over Financial Reporting referred to below.

\*      \*      \*

Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2019:

Because of the Company's limited resources, there are limited controls over information processing.

28.     On March 31, 2021, the Individual Defendants caused RenovaCare to file its annual report on Form 10-K for the period ended December 31, 2020. It stated, in relevant part:

Based upon that evaluation, our Chief Executive Officer and Principal Financial Officer concluded, as of the end of the period covered by this Annual Report that our disclosure controls and procedures were not effective due to material weaknesses in internal control over financial reporting as discussed and defined in Management's Report on Internal Control over Financial Reporting referred to below.

\*      \*      \*

Management identified the following material weaknesses in our internal control over financial reporting as of December 31, 2020:

Because of the Company's limited resources, there are limited controls over information processing.

29.     The above statements were materially misleading because they failed to disclose: (1) that, at the direction of Rayat, RenovaCare engaged in a promotional campaign to issue misleading statements to artificially inflate the Company's stock price; (2) that Rayat caused RenovaCare to improperly deny its involvement in the promotional campaign; (3) that, as a result of the foregoing, the Company's

14

disclosure controls and procedures were defective; (4) that, as a result of the foregoing, RenovaCare would be subject to regulatory scrutiny; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### C.    The Truth Begins to Emerge

30.    On May 28, 2021, the SEC issued a litigation release stating that RenovaCare was being charged with alleged securities fraud. According to the complaint, between July 2017 and January 2018, Rayat "arranged, and caused RenovaCare to pay for, a promotional campaign designed to increase the company's stock price."

31.    Specifically, "Rayat was closely involved in directing the promotion and editing promotional materials," by providing "false information to StreetAuthority regarding the efficacy of RenovaCare's experimental burn-wound healing medical device." Among other things, these promotional materials described a patient who purportedly recovered from severe burns in three days using RenovaCare's SkinGun, when in reality, the "before" and "after" pictures were taken *five years* apart. The materials also claimed that SkinGun "could soon be approved by the FDA [Food and Drug Administration] . . . . RenovaCare has submitted a 510(k) filing to the FDA . . . ." However, at the time, the Company did not have a

15

pending 510(k) application and had withdrawn its only application (seeking approval for use in clinical studies).

32.     Rayat also arranged for monthly payments to the publisher "to be made through third parties for the fraudulent purpose of concealing Rayat's and the company's involvement." According to the complaint, Rayat knew or was reckless in not knowing that the publisher was required to disclose payments from RenovaCare pursuant to Section 17(b) of the Securities Act of 1933, especially because in 2000, Rayat had settled a case with the SEC for violating the same statute.

33.     On this news, the Company's stock price fell $0.66, or 24.8%, over three consecutive trading sessions to close at $2.00 per share on June 2, 2021.

## VI.   DAMAGES TO THE COMPANY

34.     As a direct and proximate result of the Individual Defendants' conduct, RenovaCare has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

> (a)     Any fines or penalties paid in connection with the SEC Action;
>
> (b)     Legal fees incurred in connection with the SEC Action and Securities Class Action;
>
> (c)     Any funds paid to settle the Securities Class Action; and

16

(d) Costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to RenovaCare.

35. In addition, RenovaCare's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business. The credibility and motives of management are now in serious doubt.

36. The actions complained of herein have irreparably damaged RenovaCare's corporate image and goodwill. For at least the foreseeable future, RenovaCare will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that RenovaCare's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII. DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

37. Plaintiff brings this action derivatively in the right and for the benefit of RenovaCare to redress injuries suffered, and to be suffered, by RenovaCare as a direct result of breaches of fiduciary duty by the Individual Defendants and contribution for violations of Sections 10(b) of the Exchange Act. RenovaCare is

17

named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

38.    Plaintiff will adequately and fairly represent the interests of RenovaCare in enforcing and prosecuting its rights.

39.    Plaintiff has continuously been a shareholder of RenovaCare at times relevant to the wrongdoing complained of and is a current RenovaCare shareholder.

40.    When this action was filed, RenovaCare's Board consisted of defendants Rayat and non-party director Kaiyo Nedd ("Nedd").  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

41.    Rayat is the Company's Chairman and former CEO, and therefore, is not independent. As alleged herein, Rayat faces a significant likelihood of liability in the SEC Action for his direction and involvement in the pump-and-dump scheme, so he likewise faces a significant likelihood of liability here.

42.    Nedd is not disinterested. The Company's 2020 10-K states that Rayat beneficially owns approximately 72.05% of RenovaCare stock, which means he can "exercise significant influence or control over matters requiring stockholder approval, including the election of directors and approval of significant corporate transactions, which will have significant control over our management and policies." The 2020 10-K concedes that "Rayat's interests may be different from yours [i.e.,

stockholders]." Therefore, Nedd could not disinterestedly consider a demand to sue Rayat because it would jeopardize his position as CEO of the Company.

## VIII.  CLAIMS FOR RELIEF

### Count I

### (Against the Individual Defendants for Breach of Fiduciary Duty)

43.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.    Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of RenovaCare's business and affairs, particularly with respect to issues as fundamental as public disclosures.

45.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company.  The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of RenovaCare.

46.    In breach of their fiduciary duties owed to RenovaCare, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

PHDATA 8003146_1

47.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report the Company's overall prospects.

48.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, RenovaCare has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## Count II

**(Against Defendants Rayat and Bold for Contribution For Violations of Sections 10(b) and 21D of the Exchange Act)**

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

50.     The conduct of Defendants Rayat and Bold, as described herein, has exposed the Company to significant liability under various federal and state securities laws by their disloyal acts.

51.     RenovaCare is named as a defendant in a related securities fraud lawsuit that alleges and asserts claims arising under Section 10(b) of the Exchange Act. The Company is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein. If RenovaCare is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from

the intentional, knowing, or reckless acts or omissions of all or some of the Defendants as alleged herein, who have caused the Company to suffer substantial harm through their disloyal acts. The Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

52.     As officers, directors and otherwise, Defendants Rayat and Bold had the power or ability to, and did, control or influence, either directly or indirectly, RenovaCare's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated Section 10(b) of the Exchange Act and SEC Rule 10b-5.

53.     Defendants Rayat and Bold are liable under Section 21D of the Exchange Act, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.

54.     Defendants Rayat and Bold have damaged the Company and are liable to the Company for contribution.

55.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

PHDATA 8003146_1

## IX.   PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of RenovaCare, demands judgment as follows:

A.    Declaring that plaintiff may maintain this action on behalf of RenovaCare and that plaintiff is an adequate representative of the Company;

B.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and other wrongs;

C.    Declaring that the Individual Defendants have breached their fiduciary duties to RenovaCare;

D.    Directing RenovaCare to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect RenovaCare and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.    a proposal to strengthen the Company's controls over financial reporting;

22

2.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.      a proposal to strengthen RenovaCare's oversight of its disclosure procedures; and

4.      a provision to permit the stockholders of RenovaCare to nominate at least three candidates for election to the Board;

E.      Awarding to RenovaCare restitution from Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

F.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.      Granting such other and further relief as the Court deems just and proper.

23

## X.    JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff hereby demands a trial by jury.

Dated: December 17, 2021

*/s/ Lisa J. Rodriguez*_____
**SCHNADER HARRISON SEGAL & LEWIS LLP**
Lisa J. Rodriguez
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: (856) 482-5222
Fax: (856) 482-6980
ljrodriguez@schnader.com

*Liaison Counsel for Plaintiff*

**GLANCY PRONGAY & MURRAY LLP**
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, NY 10019
Telephone: (212) 935-7400
Facsimile: (212) 756-3630
Email: bsachsmichaels@glancylaw.com

Robert V. Prongay
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
Email: prajesh@glancylaw.com

*Counsel for Plaintiff Melvin Emberland*

24

## <u>VERIFICATION</u>

I, Melvin Emberland, do hereby verify that I am a holder of common stock of RenovaCare, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint. All of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.


Date: 12/15/2021

_Melvin Emberland_
_____
Melvin Emberland

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original Proceeding   ☐ 2  Removed from State Court   ☐ 3  Remanded from Appellate Court   ☐ 4  Reinstated or Reopened   ☐ 5  Transferred from Another District *(specify)*   ☐ 6  Multidistrict Litigation - Transfer   ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.